Richard S. Busch (SBN 319881)
E-Mail: *rbusch@kingballow.com*
**KING & BALLOW**
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (424) 253-1255
Facsimile: (888) 688-0482
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| ROBIN WILLIAMS TRUST, | Case Number: 22-cv-00815 |
|---|---|
| Plaintiff, | **COMPLAINT FOR COPYRIGHT INFRINGEMENT** |
| vs. | |
| PANDORA MEDIA, LLC, a limited liability company | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff ROBIN WILLIAMS TRUST, by and through its attorneys of record, alleges as follows:

## JURISDICTION

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the action arises under the original and exclusive jurisdiction of the federal court and 28 U.S.C. § 1338(a) as the controversy arises under the Copyright Act of 1976 (17 U.S.C. § 101 *et seq.*).

2. This Court has personal jurisdiction over Defendant as discussed fully below.

1
COMPLAINT FOR COPYRIGHT INFRINGEMENT

3. This Court has general personal jurisdiction over Pandora Media, LLC ("Pandora") because Pandora's principal place of business is in Oakland, California, while also having a substantial office in Santa Monica, California, meaning that Pandora is at home in the State of California. Furthermore:

    a. Upon information and belief, through January 28, 2022, Pandora was qualified to do business in California and was registered as a foreign corporation with the California Secretary of State.

    b. Pandora is also registered as a foreign limited liability company with the California Secretary of State.

    c. Pandora's designated DMCA Copyright Agent identified in its "Intellectual Property Policy" on its website is located in California at 2100 Franklin Street, 7th Floor, Oakland, California 94612.

    d. Pandora has previously admitted in other federal court filings that California has jurisdiction over it. *See*, Wixen Music Publishing, Inc. v. Pandora Media, Inc., Case No. 2:19-cv-5278-SVW (C.D. Cal.), Dkt. 15 (Pandora Media, Inc.'s Answer) at ¶¶ 16-17 ("Pandora admits that [it] has availed itself of California law . . . and venue is proper in the [Central District of California]").

4. This Court has specific personal jurisdiction over Pandora because its suit-related conduct creates a substantial connection with the State of California and this Judicial District. ROBIN WILLIAMS TRUST (hereinafter "Williams") is a copyright owner of properly registered literary works (the "Works" or "Williams's Works") (*see* Exhibit A). Upon information and belief, Pandora has generated substantial revenue from exploitation of the Works in California, as further discussed below:

    a. Pandora actively and purposely does business in California, as evidenced by its (i) subscribers and users in California, which Pandora

actively reaches out to through, at a minimum, its website (www.pandora.com) and mobile app; (ii) contracts and other transactions that it has entered into in California; (iii) revenue generated from California residents and businesses in connection with its service; and (iv) advertisements that target California residents.

b. Pandora has purposefully availed itself of California law and could and did reasonably anticipate being brought into this Court because, among other reasons, Pandora (i) has been engaged and is engaged in infringing conduct within the State of California and this District, including by knowingly, intentionally, and repeatedly streaming sound recordings and the Works over the Internet to California residents via its services; (ii) knew or should have known that the harm caused by its repeated unlicensed public performance of the Works over the Internet was aimed at comedy writers and comedy publishers, including Plaintiff, who control the Works and are managed and administered in or near Los Angeles County, California, a global hub of the entertainment industry; and (iii) knew or should have known that Plaintiff, an industry leading comedian, actor and comedy writer for nearly 40 years, would suffer, and in fact did suffer, the brunt of the harm caused by Pandora's unauthorized acts in California and around the world.

5. Finally, the ROBIN WILLIAMS TRUST is managed and administered in Los Angeles, California.

## VENUE

6. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), and § 1400(a), as a substantial part of the events or omissions giving rise to the claim occurred in this district, including for example, by the maintenance of

Pandora's corporate office in Santa Monica, California. Plaintiff has its principal place of business in this District and has been injured in this District as a result of Pandora's infringing conduct.

## PARTIES

7. Plaintiff, ROBIN WILLIAMS TRUST, represents the intellectual property rights of the late Robin Williams, who was an actor and comedian and resided in California. The ROBIN WILLIAMS TRUST is in the care of Trustee, Arnold D. Kassoy, of Manatt, Phelps & Phillips, LLP, located in Los Angeles, California.

8. Defendant, Pandora, is a Delaware limited liability company with a principal place of business at 2100 Franklin Street, Suite 700, Oakland, California 94612. According to its website, Pandora maintains another corporate office in California, located at 3000 Ocean Park Boulevard, Suite 3050, Santa Monica, California 90405.

## PRELIMINARY STATEMENT

8. Just like with music, there are two copyrights involved in the recorded performance of a literary copyrighted work: a copyright in the sound recording, and a separate copyright in the underlying spoken word composition (Williams' compositions, as noted, are referred to herein as "the Works" or "Williams's Works"). Pursuant to 17 U.S.C. §§ 106 and 204 of the Copyright Act of 1976, copyright owners have the exclusive right to, among other things, reproduce, distribute, license, and publicly perform their works. Anyone wishing to obtain the right to do so, must get a license from the respective copyright owner in both of these copyrights, and pay agreed to royalties. The failure to do so constitutes copyright infringement. As discussed below, Pandora not only did not obtain any copyright in Williams's Works but admitted that it did not do so in SEC filings, and admitted that it would very likely face copyright infringement liability as a

result. But Pandora did what most goliaths do: it decided it would infringe now to ensure it had this very valuable intellectual property on its platform to remain competitive, and deal with the consequences later. Later is now.

## STATEMENT OF FACTS

9. Throughout history, comedy and spoken word have been the bedrock of entertainment. From Shakespearian comedies to modern-day standup comedians, comedy has brought happiness to the faces of billions of people, and for nearly the last five decades, Robin Williams has been an integral part of that history.

10. Spanning nearly forty years with unique insights expressed as an active comedian, philosopher, and entertainer in literally every format imaginable, the comedic works of Robin Williams have enriched global culture, our lives, the entertainment industry and provided insights into the absurdity, joy, pains, and irony of life. He pushed other comedians and entertainers to further hone their craft while continuing to trail blaze as a comedic talent until the end of his career.

11. From his early beginnings at the Holy City Zoo in San Francisco and the Roxy in West Hollywood, California, to the television show Mork & Mindy and then through a plethora of movie acting roles, such as Genie in Disney's Aladdin, and his iconic roles in Dead Poets Society and Good Will Hunting, Williams put his heart, soul and mind into every composition he wrote or role he played. His heart was never more evident and on display then when he spent years lending his comedic talent to the charitable organization Comic Relief USA, whose mission was to raise funds to those in need, particularly America's homeless. He was joined on those Comic Relief USA television specials by Billy Crystal and Whoopi Goldberg among others. It is nowhere close to an exaggeration to say that Robin Williams was a national treasure.

12. Williams' on-stage presence and skill with comedic improvisation set the standard for the stand-up comedians. Not only was he skilled at communicating

through comedy, but he brought a personal honesty to his comedic routines, touching on subjects such as depression and addiction. In fact, Williams was so talented in free-form comedy that other comedians, who are now household names, impersonated him, which is the highest compliment a comedian can receive.

13. Williams won six (6) Golden Globe Awards, including the Cecil B. DeMille Award, two (2) Primetime Emmy Awards, two (2) Screen Actors Guild Awards, an Academy Award, and most notably five (5) Grammy Awards for his comedy albums, including Best Comedy Album and Best Spoken Word Comedy Album.

14. Yet, industry giants, such as the Defendant, took and exploited his works solely to make themselves money while knowing it had no license and had not paid, and would not be paying, royalties to Robin Williams and/or the beneficiaries of his Estate.

15. According to www.pandora.com, Pandora is the largest digital broadcast and streaming music provider in the U.S. "providing a highly-personalized listening experience to approximately 70 million listeners and users each month" through "its mobile app, the web, and integrations with more than 2,000 connected products."

16. One would think that entertainment giants like Pandora would honor the legacy of such an amazing talent, but instead it chose to illegally profit from the creative mind and literary/comedic works of Robin Williams.

17. In fact, Defendant has made twenty-seven (27) of his works (the "Works") available for dissemination to the public via their digital broadcast radio service knowing full well that it did not possess a valid license to publicly perform the Works. (*See* Exhibit A). In addition to no license, it also made no royalty payments for the Works. The Works are contained on the albums, "Reality … What a Concept", and "A Night at the Met". Plaintiff has duly complied with all required

provisions of the copyright laws of the United States applicable to the Works, including but not limited to, registering copyrights in and to said Works with the United States Copyright Office (*see* Exhibit A for applicable copyright registration numbers) on or about January 25, 1980, and October 27, 1986 respectively.

18. Further, it is required by law, and fully understood, that digital service providers, like Pandora, must also get a mechanical digital reproduction license from the owner of the underlying composition in order to make the underlying composition of a recording available for reproduction and distribution through interactive streaming. This is true even where the digital service provider has a license to interactively stream a sound recording. Pandora made sixteen (16) of these Works available via its Pandora Premium interactive streaming service, also knowing full well that it did not possess a valid license to not only publicly perform his works but also no license to distribute and reproduce the Works. Pandora made no royalty payments for the public performance and no royalty payments for the reproduction of the Works. The end result is Pandora took Williams's Works, gained listeners, subscribers and market share with full knowledge it did not have licenses and made no royalty payments for the Works, to increase its stock price helping them to reorganize the company with Sirius XM (although the two companies remain to this day completely separate corporations) for billions all while depriving the Robin Williams Estate and its beneficiaries from the legacy of Robin Williams.

19. As of January 28, 2022, www.pandora.com advertised that Robin Williams had 223,000 monthly listeners. If each listener listened to only one (1) available work per month, that's 2,676,000 broadcasts or/interactive streams per year at a minimum. Unfortunately, Williams has not received a fraction of a penny for any of these broadcasts or streams of the Works from Pandora.

20. For years therefore Pandora has illegally made reproductions and digital broadcasts on its servers and provided streaming access to its users without a proper public performance license and, when applicable, a reproduction right license. This infringement continues on a daily basis as the Works are broadcast on Pandora radio and/or remain available for interactive streaming on Pandora Premium.

21. While it is commonplace in the music industry for companies like Pandora to enter into public performance licensing agreements with performance rights organizations like BMI and ASCAP for musical compositions, these entities do not license literary works. Therefore, it was the responsibility of Pandora to seek out the copyright owners and obtain valid public performance licenses.

22. Pandora only needed to contact one entity, Williams, to obtain the required licenses. Or Pandora could have chosen not to use Williams's Works, particularly since it knew it did not have the required licenses. Instead, it chose to infringe.

23. Williams, via his company Little Andrew Enterprises, Inc., ("LAE Inc.,") entered into a recording agreement with Casablanca Record and Filmworks, Inc. ("Casablanca"), dated March 13, 1979 (the "Williams Casablanca Agreement"). Under the terms of the Williams Casablanca Agreement, Williams was obligated to provide his exclusive performance services to Casablanca, and Casablanca acquired exclusive ownership rights in the sound recordings of Williams' comedic performances in perpetuity.

24. Williams, however, retained all of his exclusive rights in the Works.

25. Additionally, Robin Williams, via his company LAE, Inc., entered into a recording agreement with CBS Records, a division of CBS, Inc., ("CBS"), and dated August 5, 1979 (the Williams CBS Agreement"). Under the terms of the Williams CBS Agreement, Williams was obligated to provide his exclusive

comedic performance services to CBS, for a performance at the Metropolitan Opera House at Lincoln Centre in New York, and CBS acquired exclusive ownership rights in the sound recordings of Williams' performances in perpetuity. Williams likewise retained all exclusive rights in these Works.

26. Pandora's failure to obtain the necessary licenses for the Works, or pay royalties, but to nonetheless infringe by exploiting the Works, has been willful. In Pandora's own SEC 10K public filing with the Security and Exchange Commission from 2011 to 2017, three quarters of a decade, Pandora admitted in its Risk Factors ever year that it performs spoken-word comedy content "absent a specific license from any [] performing rights organization" and it has never obtained a license for the underlying literary works for the sound recordings of spoken-word comedy content that it streams. Pandora further admitted that it "could be subject to significant liability for copyright infringement and may no longer be able to operate under [their] existing licensing regime." This admission was only removed, not so coincidentally, after Pandora's transaction with Sirius XM Radio.

27. Pandora nonetheless did not even take the simplest of steps to ask Williams or his representatives for licenses for the Works. To the contrary, beginning in or about August of 2020, Word Collections ("WC"), a Spoken Word/Literary Works Collection Agency contacted Pandora in an effort to negotiate a licensing agreement for various copyright owners. From that initial contact and on an ongoing basis over the course of the following year, WC made numerous efforts on behalf of WC's other spoken word/literary works clients, including on behalf of Williams beginning in April 2021, to engage Pandora in good faith negotiations, to no avail.

28. While Pandora's counsel wrote on September 14, 2021 to advise that counsel would respond with Pandora's position about unlicensed spoken word

content appearing on Pandora's platform, no substantive response from Pandora or its counsel has been sent or received.

## CAUSE OF ACTION

### (Copyright Infringement – 17 U.S.C. § 501)

29. Plaintiff repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

30. Plaintiff is the legal and beneficial owner of the United States copyrights in the Works, duly registered with the United States Copyright Office, (See Exhibit A), as discussed above.

31. Defendant has directly, vicariously, and/or contributorily infringed and/or induced infringement of Plaintiff's copyright in violation of 17 U.S.C. § 501.

32. Defendant has publicly performed, broadcasted, and provided its listeners/users of the Works, as discussed hereinabove.

33. Defendant's acts were performed without authorization, license, or consent. Defendant's unauthorized and unlicensed reproduction, distribution, public performance and display of the Works infringes Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 106 *et. seq*.

34. Defendant's infringement has been and continues to be, willful, intentional, purposeful, and with complete disregard to Plaintiff's rights.

35. As a direct and proximate result of Defendant's infringement, Plaintiff has been irreparably harmed.

36. Defendant has infringed Plaintiff's copyright interest in the Works by making reproductions and digital broadcasts on its servers and provided streaming access to its users without a proper public performance and, when applicable, reproduction rights license.

37. Plaintiff has received no royalties or payments for the Works embodied in the sound recording of the underlying literary compositions.

38. Defendant has continued to market, exploit, reproduce, distribute, and publicly perform the Works through this day, which violates Plaintiff's copyrights and are at issue in this lawsuit.

39. Defendants had knowledge and have admitted that it did not and does not possess a valid public performance license for the Works at issue, and with that knowledge of infringement, continued to infringe upon Plaintiff's copyrights.

40. The infringement is continuing as the Works continue to be exploited, performed, broadcast, and streamed across Defendant's applicable platforms, and/or their agents.

41. As a direct and proximate result of Defendant's infringement, pursuant to 17 U.S.C. § 504(a)(1) and (b), Plaintiff is entitled to actual damages in addition to Defendant's profits both domestically and relating to foreign sales of other exploitation of the Works that were distributed, performed, broadcast, or otherwise infringed domestically. Further, Plaintiff is entitled to a running royalty on all future exploitations of the Works following judgement in an amount to be determined.

42. In the alternative to profits and actual damages, pursuant to 17 U.S.C. § 504(c), Plaintiff is entitled to the maximum amount of statutory damages, $150,000 per copyrighted work for each act of copyright infringement, for a total of $4,050,000 ($150,000 times 27 registered Works).

43. As a direct and proximate result of Defendant's infringement, Plaintiff has incurred attorneys' fees and costs which are recoverable pursuant to 17 U.S.C. § 505.

44. Defendant's conduct has caused, is continuing to cause, and will further cause great damage to Plaintiff, which damages cannot be accurately measured in monetary terms, and therefore, unless enjoined by the Court, Plaintiff will suffer irreparable injury, for which Plaintiff is without adequate remedy at all.

Accordingly, Plaintiff is entitled to a permanent injunction pursuant to 17 U.S.C. § 502 following judgment, prohibiting further infringement, reproduction, distribution, sale public performance, other use, or exploitation of Plaintiff's copyright without a proper license.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief, as follows:

45. For Judgment in favor of Plaintiff and against Defendant.

46. For a declaration and finding that Defendant has willfully infringed Plaintiff's copyrighted work in violation of the Copyright Act;

47. For declaration and finding that Defendant is directly, vicariously, and/or contributorily liable for copyright infringement pursuant to 17 U.S.C. § 504(a)(1) and (b), including a finding that Defendant is liable for actual damages, as well as for Defendant's profits;

48. For an accounting of all profits, income, receipts, or other benefits derived by Defendant from the production, copying, display, promotion, distribution, broadcast, public performance, or sale of products and services or other media, either now known or hereafter devised, that improperly or unlawfully infringe Plaintiff's copyright pursuant to 17 U.S.C. § 504(a)(1) and (b);

49. For statutory damages, upon election prior to final judgment in the alternative to actual damages and profits, for willful copyright infringement pursuant to 17 U.S.C. § 504(c);

50. For costs of suit herein, including an award of attorneys' fees pursuant to 17 U.S.C. § 505;

51. For pre-judgment and post-judgment interest;

52. For a running royalty and/or ownership share in the Infringing Work following judgment in an amount to be proven at trial, or in the alternative, for the entry of an injunction requiring Defendants, their officers, agents, servants, employees, representatives, successors, licensees, partners, attorneys, and assigns, and all persons acting in concert or participation with each or any one of them to be permanently enjoined from directly or indirectly infringing, reproducing, displaying, promoting, advertising, distributing, or selling any work that infringes, contributorily infringes, or vicariously infringes Plaintiff's rights in the work protected by the Copyright Act;

53. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), and otherwise, Plaintiff respectfully demands a jury trial on all issues raised in this complaint.

PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 38(b), AND OTHERWISE, PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES RAISED IN THIS COMPLAINT.

Dated: February 7, 2022         Respectfully submitted,

                                By: /s/ Richard S. Busch
                                Richard S. Busch
                                Attorney for Plaintiff